# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

April 5, 2017

Via ECF and Hand Delivery
The Honorable Valerie E. Caproni
United States District Judge
United States District Court
Southern District of New York
50 Foley Square
New York, New York 10007

Re:  *United States v. Nelson Antonio Ortiz-Vite*
     16 cr. 617 (VEC)

Hon. Judge Caproni:

Nelson Antonio Ortiz-Vite is a fisherman from Ecuador. As noted below, and as the Court knows from his plea allocution, he did not know until he was well out to sea that the cargo on the boat he was on was drugs and not fishing gear. The government knows that to be a true statement of fact, and for his minimal role in the offense he is entitled to a four-point role reduction.  For these reasons and those stated below, we ask the Court to impose a sentence of time served.

### BACKGROUND

Ecuador is one of the poorest nations in Latin America. The village from which Mr. Ortiz-Vite hails is in one of the most economically depressed regions of the country. The 2016 Ecuador earthquake did not help. It destroyed most of the region, and made fishing difficult. The entire country was bracing for a tsunami and few boats went out to sea.

Mr. Ortiz-Vite's home was destroyed. Months went by and

Honorable Valerie E. Caproni                    April 5, 2017
Southern District of New York                    Page 2 of 4

Re:   *United States v. Ortiz-Vite*
      16 CR 617

Mr. Ortiz-Vite had little or no work until the time that he
was offered a fishing job by another. Truly believing he was
going to work as a fisherman, he agreed.

     Mr. Ortiz-Vite proffered these facts to the government.
They believed him. The Department of Justice allowed him to
plead to a superseding information that properly reflects
his role and his conduct, and agreed to a four-point
reduction in light of his minor role.


                          ARGUMENT

     The parsimony clause is the lodestar of all sentencings
and the Court is to impose a sentence that is sufficient,
but not greater than necessary to fulfil the goals of
sentencing. The Sentencing Guidelines, because of their
arithmetic approach, place great weight on putatively
measurable quantities, such as *the weight of drugs in
narcotics cases* or the amount of financial loss in fraud
cases, without explaining why it is appropriate to accord
such weight to quantity. *United States v. Adelson*, 441 F.
Supp. 2d at 509 (2d Cir. 2001). To balance out the
inequities, Courts are in some sense forced to place greater
reliance on the other factors set forth in section 3553(a),
to ensure fair sentence on the human being "who will bear
the consequences." *Id.*, 441 F.Supp.2d at 515.


   A. NELSON ORTIZ VITE – HIS HISTORY AND OFFENSE CONDUCT

     The human being who stands to bear consequence here is
a rather unusual one both in terms of his background and his
offense conduct.  He is limited.  Guileless. Poor. And, as
the government concedes, unaware that the load was drugs
until he was at high sea. *See* Exhibit A, transcript of plea
proceedings.

     3,000 miles away from his family, in a jail in the
United States of America he wonders why he did not recognize
the trip for what it was.   Perhaps he should have but there

Honorable Valerie E. Caproni                     April 5, 2017
Southern District of New York                        Page 3 of 4

Re:   *United States v. Ortiz-Vite*
      16 CR 617

are reasons he did not.  He did not see the drugs being
loaded onto the boat. He never handled the drugs. He knew
very little and precisely because of that he was chosen to
be a fisherman on the boat.

B. THE PROPER SENTENCE

    Mr. Ortiz-Vite seeks a sentence of time served. We do
not repeat here all the personal facts about him, as they
are noted in the pre-sentence report. Letters from his
family in Ecuador are attached as Exhibit B, and provide to
the Court information about our client and his situation in
Ecuador.

    In support of our request for a sentence of time served
we note the following facts: (i) he was to go on a boat and
fish; that is what he was told and that is what he believed
to be true; (ii) he had little or no curiosity about the job
offered to him as he wanted to work and because the work
offered to him was within the scope of what he generally
does – fish; (iii) the money he was to be paid was not more
than the usual amount; (iv) the gear he took with him was
what he took on all his other fishing trips and; (v) he was
not pulled into the inner circle that was running the drugs.

    With these facts, facts one does not ordinarily see in
cases of this nature, the defense seeks a sentence of time-
served.

C. RESPECT FOR THE LAW AND PUNISHMENT

    Finally, there should be no doubt in anyone's mind that
Mr. Ortiz-Vite has been punished. He was held under the most
trying conditions for about a month until he was brought to
the United States. Since then, he has been detained 3,000
miles from his family and his only contact has been with his
lawyers. At the jail, he works and tries to make money that
he can send to his family.  *See* Exhibit C.  A sentence of
time served will not result in Mr. Ortiz-Vite getting home
anytime soon. He will be detained for months longer, if not
more, in an immigration facility until he is deported.

    As to general deterrence, we simply have no objective

Honorable Valerie E. Caproni                    April 5, 2017
Southern District of New York                   Page 4 of 4

Re:  *United States v. Ortiz-Vite*
     16 CR 617

evidence that longer sentences imposed in the United States
carries the message to Ecuador.

CONCLUSION

For all of the above-stated reasons, I ask that the Court
impose a sentence of time served.


                         Respectfully submitted,

                         /s/
                         Sabrina P. Shroff
                         Assistant Federal Defender

cc:  Amanda Houle, AUSA

# EXHIBIT A

GBIAORTPps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          (S2) 16-cr-617 (VEC)

NELSON ANTONIO ORTIZ VITE,

                Defendant.

------------------------------x

                                        New York, N.Y.
                                        November 18, 2018
                                        3:30 p.m.

Before:

                    HON. VALERIE E. CAPRONI

                                        District Judge

                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  AMANDA L. HOULE, ESQ.
     ANDREA L. SURRATT, ESQ.
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK INC.
     Attorneys for Defendant
BY:  SABRINA P. SHROFF, ESQ.


Also Present:  Mercedes Avalos
               Spanish Interpreter

GBIAORTPps

```
 1                    (In open court)

 2              THE CLERK:

 3              MR. SURRATT:  In the matter of United States of

 4    America v. Nelson Antonio Ortiz Vite, with Spanish interpreter

 5    Mercedes Avalos.  All counsel please identify yourselves for

 6    the record.

 7              MS. HOULE:  Good afternoon, your Honor.  Amanda Houle

 8    and Andrea Surratt for the government.

 9              THE COURT:  Good afternoon.

10              MR. SHROFF:  Good afternoon, your Honor.  On behalf of

11    Nelson Ortiz Vite, Federal Defenders of New York, by Sabrina

12    Shroff.  My client is standing to my right.

13              THE COURT:  I'm sorry.  Say that again?

14              MR. SHROFF:  I said, my client is standing to my

15    right.

16              THE COURT:  Oh.  Thank you.

17              All right.  We've got an information?  Who do I have?

18              MS. HOULE:  Yes, your Honor.  It's a superseding

19    information.  It should be S2.

20              THE COURT:  So is there a new plea agreement?

21              MS. HOULE:  Yes, your Honor.

22              THE COURT:  Or is it the same plea agreement?

23              MS. HOULE:  There is an adjustment to the plea

24    agreement.

25              THE COURT:  Please be seated, everybody.
```

1        MR. SHROFF:  Your Honor, should we inform the Court of

2   the change?

3        THE COURT:  That could be helpful.

4        MR. SHROFF:  Because I think a change appears, the

5   government has kindly revised its position, and on page 2,

6   paragraph 3, that previously said two points and now says four.

7   I think that changes the final guideline calculation from 87 to

8   108 to 70 to 87 on the next page.

9        THE COURT:  OK.  But otherwise this is still a maximum

10  of 20 years.  So it's not affecting the sentence?

11       MS. HOULE:  That's right, your Honor.  It just affects

12  the stipulated guidelines range as well as the fine range,

13  which now is 25 thousand at the bottom instead of 30.

14       THE COURT:  And what's the difference between the

15  information and the indictment?

16       MS. HOULE:  So the information is the same as the one

17  that was presented previously when we were going to have the

18  plea.

19       THE COURT:  OK.  So this is a waiver of indictment as

20  well as a guilty plea.

21       MS. HOULE:  Yes, your Honor.

22       THE COURT:  OK.  Does Ms. Shroff have an application?

23       MR. SHROFF:  Yes, your Honor.  My client has an

24  application to allow him to withdraw his previously entered

25  plea of not guilty and enter a plea of guilty pursuant to the

GBIAORTPps

1  plea agreement dated November 18, 2016.

2          THE COURT:  OK.  Mr. Ortiz Vite, your attorney has

3  told me that you wish to waive indictment and plead guilty.

4  Before that can happen, I need to ask you some questions so I

5  can be sure that you understand the rights that you are giving

6  up, that you fully understand the consequences of the plea, and

7  that you're pleading guilty because you are guilty and not for

8  any other reason.

9          Mr. Brantley, please swear in the defendant.

10          (Defendant sworn through the Spanish interpreter)

11          THE CLERK:  Please state your full name and spell your

12  last name slowly for the record.

13          THE DEFENDANT:  Nelson Ortiz.

14          MR. SHROFF:  It would be hard for him to spell.

15          THE COURT:  OK.  That's fine.

16          Please be seated.

17          Mr. Ortiz, how old are you?

18          THE DEFENDANT:  (Through interpreter) 28.

19          THE COURT:  28?

20          THE DEFENDANT:  28 years old.

21          THE COURT:  How far did you go in school?

22          THE INTERPRETER:  May the interpreter seek

23  clarification?

24          THE COURT:  Yes.

25          THE DEFENDANT:  Fifth grade, elementary school.

GBIAORTPps

1                THE COURT:  Are you able to understand any English?

2                THE DEFENDANT:  No.

3                THE COURT:  Are you able to read in Spanish?

4                THE DEFENDANT:  A little bit.  A little bit.

5                THE COURT:  Are you now or have you recently been

6      under the care of a doctor or a psychiatrist?

7                THE DEFENDANT:  No.

8                THE COURT:  Have you ever been treated or hospitalized

9      for any mental illness, or any type of addiction, including

10     drug or alcohol addiction?

11               THE DEFENDANT:  No.

12               THE COURT:  In the past 24 hours, so in the last day,

13     have you taken any drugs, medicines, or pills, or have you

14     consumed any alcohol?

15               THE DEFENDANT:  No.

16               THE COURT:  Is your mind clear today?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Your attorney has told me that you wish to

19     waive indictment and enter a plea of guilty.  Is that correct?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Have you had an opportunity to discuss the

22     consequences of waiving indictment and pleading guilty with

23     your attorney?

24               THE DEFENDANT:  Yes.

25               THE COURT:  Are you satisfied with Ms. Shroff's

1     representation of you?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Does either attorney have any doubt about

4     the defendant's competence to waive indictment and enter a

5     guilty plea at this time?

6              MS. HOULE:  No, your Honor.

7              MR. SHROFF:  No, your Honor.

8              THE COURT:  On the basis of the defendant's responses

9     to my questions and my observations of his demeanor, I find

10    that he is fully competent to enter an informed guilty plea and

11    waiver of indictment at this time.

12             OK.  Mr. Ortiz, did you receive a copy of the

13    information, which is numbered (S2) 16-cr-617?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did you discuss it with your attorney?

16             THE DEFENDANT:  Yes.

17             THE COURT:  This document is called a felony

18    information.  Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  The information was issued by the United

21    States Attorney.  Because the charge against you is a serious

22    charge, it's a felony, you have a constitutional right to

23    require the government to present evidence to a grand jury, to

24    see whether the grand jury will charge you with that crime.  Do

25    you understand that?

GBIAORTPps

1          THE DEFENDANT:  Yes.

2          THE COURT:  If the grand jury voted to charge you, the

3     instrument that they would issue would be called an indictment,

4     and it would be signed by the foreperson of the grand jury and

5     the United States Attorney.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You do not have to give up your right to

8     an indictment.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you want to waive your right to have

11     your case presented to a grand jury?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you sign the waiver of indictment

14     form?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Before you signed it, did you discuss it

17     with your attorney?

18          THE DEFENDANT:  Yes.

19          THE COURT:  The waiver of indictment form will be

20     marked Court Exhibit No. 1.

21          Did anybody threaten you or force you to give up your

22     right to be indicted?

23          THE DEFENDANT:  No.

24          THE COURT:  I find that the defendant has knowingly

25     and voluntarily waived his right to be indicted by a grand

GBIAORTPps

 1    jury.  Mr. Brantley will witness the form, and the information

 2    will be accepted for filing.

 3             Do you wish me to read the information to you, or do

 4    you waive a public reading?

 5             THE DEFENDANT:  I waive it.

 6             THE COURT:  OK.  You are charged with conspiring to

 7    possess and possess with intent to distribute cocaine while

 8    being on a vessel that's subject to the maritime jurisdiction

 9    of the United States.  Do you understand what you're being

10    charged with?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Mr. Ortiz, before I accept your guilty

13    plea, I have to be assured that you understand all the rights

14    that you will be giving up if you plead guilty.  Please listen

15    carefully.  If you don't understand any of my questions or if

16    you want an opportunity to talk to your attorney, just tell me

17    that.  OK?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Your attorney has said that you wish to

20    plead guilty.  You have the right to plead not guilty and to

21    persist in that plea.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  You have the right to be represented by an

24    attorney at trial and at every other stage of the proceeding.

25    If you can't afford an attorney, an attorney will be appointed

GBIAORTPps

1    to represent you without cost.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  You have the right to a speedy and public

4    trial by a jury on the charges against you which are contained

5    in the information.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If you went to trial, you would be

8    presumed innocent, and the government would be required to

9    prove, beyond a reasonable doubt, that you were guilty at

10   trial.  You would not have to prove that you were innocent.  Do

11   you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you went to trial, you would have the

14   right to see and hear all of the witnesses against you, and

15   your attorney would have the right to cross-examine those

16   witnesses.  Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  If you went to trial, your attorney could

19   object to the government's evidence.  Your attorney and you

20   would have the right to present evidence on your behalf and the

21   right to compel witnesses to come to court to testify on your

22   behalf.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  If you went to trial, you would have the

25   right to testify if you wanted to, but you couldn't be forced

GBIAORTPps

1  to testify if you did not want to.  If you chose not to

2  testify, I would tell the jury that they could not hold that

3  against you.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  If there were a trial, the jury would be

6  composed of 12 people, and all 12 would have to agree that the

7  government has proved that you are guilty before you could be

8  found guilty.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  If you were convicted at trial, you would

11  have the right to appeal the verdict.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  If you plead guilty and I accept your

14  plea, you will be giving up all of the rights that I have just

15  described, except your right to counsel.  You'll be found

16  guilty just based on your plea of guilty.  Do you understand

17  that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that you can change your

20  mind for any reason, including right now, and tell me that you

21  want to plead not guilty?

22          THE DEFENDANT:  I am guilty.

23          THE COURT:  OK.  All right.  Ms. Houle, what are the

24  elements of this offense?

25          MS. HOULE:  First, your Honor, that two or more people

GBIAORTPps

1    in some way agreed to try to accomplish a shared and unlawful

2    plan to violate the Maritime Drug Law Enforcement Act by

3    possessing cocaine on a vessel with intent to distribute it;

4    second, that the defendant knew the unlawful purpose of the

5    plan and willfully joined in it; and, third, that the object of

6    the unlawful plan was to possess with the intent to distribute

7    cocaine.

8            THE COURT:  OK.  Mr. Ortiz, if you don't plead guilty,

9    the government will have to prove each of the elements that the

10   prosecutor just laid out beyond a reasonable doubt.  Do you

11   understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  The maximum possible penalty for the crime

14   that you're going to plead guilty to is a term of imprisonment

15   of up to 20 years; a term of supervised release that must be at

16   least three years and can be as long as the rest of your life;

17   a fine of $1 million or two times the pecuniary gain from the

18   crime or two times the pecuniary loss from the crime, whichever

19   one of those numbers is the largest; and a $100 special

20   assessment that must be imposed.  Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  "Supervised release" means that you will

23   be subject to monitoring and supervision after you are released

24   from prison.  Do you understand that?

25           THE DEFENDANT:  Mm-hmm, yes.

GBIAORTPps

1          THE COURT:  There are terms and conditions of

2    supervised release that you have to comply with.  If you don't

3    comply with the terms and conditions of supervised release, you

4    can be returned to prison without a jury trial.  Do you

5    understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you violate the terms or conditions of

8    supervised release and you are sent back to jail, that new jail

9    term can be for all or part of the term of supervised release.

10   You will not necessarily get credit for time that you've

11   already served on supervised release.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  As part of your sentence, I can also order

14   restitution to any person that was injured as a result of your

15   criminal conduct.  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If I accept your guilty plea and I adjudge

18   you guilty, that adjudication can deprive you of valuable civil

19   rights, such as the right to vote, the right to hold public

20   office, the right to serve on the jury, the right to possess

21   any type of a firearm, and the right to hold certain

22   professional licenses.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Mr. Ortiz, are you a United States

25   citizen?

GBIAORTPps

1           THE DEFENDANT:  No.

2           THE COURT:  What's your status in the United States?

3           THE DEFENDANT:  I'm Ecuadorian.

4           THE COURT:  So did you come here entirely illegally?

5   You were brought here, right?  You got arrested outside the

6   United States and brought in a the United States?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Did you have a visa or anything for the

9   United States?

10          THE DEFENDANT:  No.

11          THE COURT:  OK.  Have you discussed with your attorney

12  the fact that you are likely, in fact you are almost assured,

13  to be deported back to Ecuador at the end of your sentence?

14          THE DEFENDANT:  Yes.

15          THE COURT:  So I don't know whether you want to go

16  back to Ecuador or not, but whether you want to go back or not,

17  the fact that you may be deported will not be a grounds for you

18  to withdraw your guilty plea.  Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If for any reason you are not deported at

21  the end of your sentence, or if after the end of your sentence

22  you are held in the United States pending deportation, you will

23  be subject to the terms of supervised release.  Do you

24  understand that?

25          THE DEFENDANT:  Yes.

GBIAORTPps

          THE COURT:  If you are deported and you return to the
United States without the permission of the United States,
that's a crime.  But in addition to being a crime that you can
be prosecuted for, it would also be a violation of the term of
supervised release if you're still on supervised release at the
time you return.  Do you understand that?

          THE DEFENDANT:  Yes.

          THE COURT:  If you're held in the United States
pending deportation, it would also be a violation of the terms
of supervised release if you commit a crime while you're
waiting to be deported.  Do you understand that?

          THE DEFENDANT:  Yes.

          THE COURT:  Ms. Shroff, have you discussed the
immigration consequences of his plea with him?

          MR. SHROFF:  Yes, your Honor.

          THE COURT:  Are you satisfied that he understands
what's going to happen?

          MR. SHROFF:  Yes, he does.

          THE COURT:  OK.  Mr. Ortiz, do you understand that
there are sentencing guidelines that I must consider in
determining the appropriate sentence in your case?

          THE DEFENDANT:  Yes.

          THE COURT:  Have you talked to your attorney about how
the guidelines will apply to your case?

          THE DEFENDANT:  Yes.

GBIAORTPps

```
 1              THE COURT:  I will have to calculate the guideline

 2    range and consider that range when determining what your

 3    sentence will be.  Do you understand that?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  In addition to determining what the

 6    guideline range is, I will also have to consider the sentencing

 7    factors that are set forth in federal law.  Federal law

 8    requires me to consider a number of factors about you and about

 9    the offense in determining the appropriate sentence in your

10    case.  Do you understand that?

11              THE DEFENDANT:  Yes.

12              THE COURT:  So even after I calculate the guideline

13    range, I have the ability to impose a sentence that is either

14    above or below that guideline range based on these other

15    factors.  Do you understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  If your attorney or anyone else has

18    attempted to estimate or predict what your sentence will be,

19    their estimate or prediction could be wrong.  Do you understand

20    that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  It's perfectly appropriate for you and

23    your attorney to talk about how your sentence will be

24    calculated, but no one can give you any assurance of what your

25    sentence will be.  It's my job to determine what your sentence
```

GBIAORTPps

1   will be, and I can't do that until we've done all the other

2   things we've discussed.  Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  So nobody, not even I, can today predict

5   what your sentence will be.  Do you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Mr. Ortiz, I stress this at some length,

8   because it's important for you to understand: if you're

9   sentence is different from what anyone has estimated or

10   predicted it will be, or what you hope it will be, that will

11   not be a grounds for you to withdraw your guilty plea.  Do you

12   understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  If you're sentenced to prison, there is no

15   parole, and therefore you cannot be released early on parole.

16   Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  I have been given a copy of the plea

19   agreement, which has been marked as Court Exhibit 2.  Is that

20   your signature on the plea agreement?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did someone read the agreement to you

23   prior to you signing it?

24           THE DEFENDANT:  My attorney did.

25           THE COURT:  Did you discuss it with your attorney

GBIAORTPps

1        before you signed it?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  Is there any agreement, promise, or

4        understanding with the government about your plea that is not

5        contained in the plea agreement?

6                  THE DEFENDANT:  I'm sorry.  What did you say?

7                  THE COURT:  Other than what's in the plea agreement,

8        did the government promise you anything in connection with your

9        plea?

10                 THE DEFENDANT:  No.

11                 THE COURT:  Has anyone threatened you or forced you to

12       plead guilty?

13                 THE DEFENDANT:  No.

14                 THE COURT:  Other than what's in the plea agreement,

15       has anyone promised you anything or offered you any inducement

16       to plead guilty?

17                 THE DEFENDANT:  No.

18                 THE COURT:  Has anyone promised you what your sentence

19       will be?

20                 THE DEFENDANT:  No.

21                 THE COURT:  One of the provisions that is in the plea

22       agreement is what's called a waiver of the statute of

23       limitations.  What that means is, if for some reason down the

24       road your plea is withdrawn or your conviction is vacated, the

25       government would be allowed to charge you at that point with

GBIAORTPps

1    any crime they could charge you with today.  Do you understand

2    that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Another provision that's in the plea

5    agreement is what's culled a stipulation, or an agreement,

6    regarding the sentencing guidelines.  That's an agreement

7    between you and the government, and it's binding on you and the

8    government, but it's not binding on me.  Do you understand

9    that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  So regardless of what you and the

12    government have agreed, I'm going to make my own guidelines

13    calculation.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Under certain circumstances, you'll have

16    the right to appeal the sentence.  In this case, you're

17    agreeing that, so long as I sentence you to less than 87

18    months, you will not appeal your sentence.  Do you understand

19    that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Mr. Ortiz, in order to accept your guilty

22    plea, I have to be convinced that you are actually guilty.  So

23    what did you do that makes you guilty?

24           THE DEFENDANT:  In July 2016, I left from a town in

25    Ecuador with two more persons on a go-fast boat, which

GBIAORTPps

```
 1    contained drugs.  In the middle of the ocean, I realized that

 2    it was drugs that were on the boat.

 3               Should I go on?

 4               THE COURT:  Yes.

 5               THE DEFENDANT:  When we saw the U.S. Coast Guard, they

 6    stopped us.  And so there we were detained.

 7               THE COURT:  OK.  You said you discovered when you were

 8    in the middle of the ocean that there were drugs on board.

 9    Correct?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Did you know that there was cargo, there

12    was something on the boat, when you first got onto the boat in

13    Ecuador?

14               THE DEFENDANT:  I saw -- I saw that when I boarded the

15    go-fast boat in Ecuador, but it wasn't until the middle of the

16    ocean that I realized what it was.

17               THE COURT:  When you got on the boat, what did you

18    think was on the boat?

19               (Pause)

20               MR. SHROFF:  Your Honor, may I just have a moment?

21               THE COURT:  You may.

22               (Pause)

23               MR. SHROFF:  Thank you, your Honor.

24               THE COURT:  OK.  Mr. Ortiz, when you first got on the

25    boat, what did you think was on the boat?
```

GBIAORTPps

1    THE DEFENDANT:  I first got on the boat.  Then I got

2  on the other boat.  I realized that it was heavy.  And then in

3  the middle of the ocean I realized that it was loaded with

4  drugs, packages.

5    THE COURT:  No, no, no.  But when you first got on the

6  boat, you knew there was stuff on the boat.  Right?

7    THE DEFENDANT:  Yes.  Well, I didn't know, but it was

8  when I went onto the other boat that I realized.

9    THE COURT:  We're talking about the go-fast boat.

10  When did you get onto the go-fast boat?

11    THE DEFENDANT:  After they brought me on that first

12  boat, I quickly got on the go-fast boat.

13    THE COURT:  Was somebody paying you to get on the

14  go-fast boat?

15    THE DEFENDANT:  No.

16    THE COURT:  Why were you on the boat?

17    THE DEFENDANT:  Because I was forced to go there.

18    THE COURT:  Who forced you?

19    THE DEFENDANT:  A gentleman who goes by the name of

20  Rabo.

21    THE COURT:  So Rabo forced you to get on the boat?

22    THE DEFENDANT:  Yes.

23    THE COURT:  Do you know how to sail?  Are you a

24  boatman?

25    THE DEFENDANT:  Well, I never thought that that's what

GBIAORTPps

1     it was.

2              (Pause)

3              THE DEFENDANT:  When I, when I got on the other boat,

4     I saw that it was heavy.

5              THE COURT:  This is the go-fast boat.  Is that --

6              THE DEFENDANT:  Yes.

7              THE COURT:  OK.  So you saw it was heavy.

8              THE DEFENDANT:  Yes.  It was heavy.

9              THE COURT:  And someone was making you -- forced you

10    to get on the boat.

11             THE DEFENDANT:  Yes.

12             THE COURT:  Did they put a gun to your head?

13             THE DEFENDANT:  No.

14             THE COURT:  How did they force you?

15             THE DEFENDANT:  Threats towards my wife.

16             THE COURT:  OK.  Was this person who was threatening

17    your wife, did you know them to be involved in the narcotics

18    trade?

19             THE DEFENDANT:  No, I did not know.

20             THE COURT:  OK.  So when he forced you to get on the

21    boat, what did he tell you to do?

22             THE DEFENDANT:  He told me to get on that go-fast

23    boat, that my job was to run the go-fast.

24             THE COURT:  To where?

25             THE DEFENDANT:  He, he didn't tell me where.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

GBIAORTPps

         THE COURT:  Well, was there a radio or something?

         THE DEFENDANT:  He just -- he just gave us a compass.

         THE COURT:  And told you what?

         THE DEFENDANT:  He just gave us a destination.  That's
all.

         THE COURT:  So you had like a latitude and a longitude
that you were supposed to go to?

         THE DEFENDANT:  No.  I, I hadn't the slightest idea.

         THE COURT:  OK.  So you had no idea that there were
drugs on the boat when you got on it.

         THE DEFENDANT:  It was when I got on the other boat
that I realized that it was drugs over there.

         THE COURT:  All right.  What other boat?  Where was
that?  When did you get on the boat that had -- that you
realized had drugs on it?

         (Pause)

         THE DEFENDANT:  I should have realized that the boat
had drugs because it was heavy.

         THE COURT:  Well, why would that mean it has drugs?

         THE DEFENDANT:  Because I saw that the boat, the
go-fast, was heavy.

         THE COURT:  And where were you when you first saw the
go-fast boat?

         THE DEFENDANT:  I was on the other boat.

         THE COURT:  So you were out in the ocean.

GBIAORTPps

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you went from one boat to another.

3          THE DEFENDANT:  Yes.

4          THE COURT:  Who took you to the go-fast?

5          THE DEFENDANT:  The guy that I mentioned to you

6     before, Rabo.

7          THE COURT:  Who was threatening your wife.

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  So did you have, when you saw the go-fast

10    boat, could you have said, I'm not getting on it?

11         THE DEFENDANT:  Yes.  I told him that I didn't want to

12    get on it because I present -- I felt there was something bad.

13         THE COURT:  And the something bad that you thought was

14    on the boat was drugs?

15         THE DEFENDANT:  Yes.

16         THE COURT:  OK.  Tell me about the threat against your

17    wife.

18         THE DEFENDANT:  He told me that if I didn't get on the

19    go-fast boat, that he knew where I lived with my wife.

20         THE COURT:  And you understood that to be a threat

21    against your wife?

22         THE DEFENDANT:  Yes, I did understand that as a

23    threat.

24         THE COURT:  When you got on the boat, the go-fast

25    boat, did you know that what you were doing was illegal?

GBIAORTPps

1          THE DEFENDANT:  Yes.

2          THE COURT:  Does either attorney want me to make

3     further inquiry?  Ms. Houle?

4          MS. HOULE:  One moment, your Honor.

5          No.  Thank you, your Honor.

6          THE COURT:  Ms. Shroff?

7          MR. SHROFF:  No, your Honor.

8          THE COURT:  Ms. Shroff, do you know of any valid

9     defense that would prevail at trial?  In particular, do you

10    have reason to believe that his coercion defense would not be

11    effective at trial?

12         MR. SHROFF:  Your Honor, I've discussed the defenses

13    with my client.  He understands what they are.  Knowing what

14    the risks involved at trial are, with the fact that were he to

15    proceed to trial on the indictment, it would be a mandatory

16    minimum sentence of ten years, Mr. Ortiz Vite has decided to

17    enter a plea of guilty.

18         THE COURT:  It sort of sounds like an *Anders* plea.

19         MR. SHROFF:  No, your Honor.  He's allocuted.

20         THE COURT:  Sort of.

21         MR. SHROFF:  It's a sufficient allocution.  And it is

22    his choice not to go to trial.  So that's his choice.

23         THE COURT:  Mr. Ortiz, part of what you've told me is

24    that you participated in this because your wife was threatened.

25    Under certain circumstances, participating in a crime because

GBIAORTPps

```
 1   you've been threatened is a defense.  At the end of the day, it
 2   would be up to the jury to decide whether they believe that
 3   that's what happened.  They could believe you and say you're
 4   not guilty.  Or they could not believe you, and find you
 5   guilty.  Do you understand how a defense in a criminal case
 6   works?
 7               THE DEFENDANT:  Yes.
 8               THE COURT:  Has Ms. Shroff explained to you that the
 9   risk of going to trial and presenting this defense is that if
10   the jury doesn't believe it, you would be found guilty and
11   there would be a mandatory minimum of ten years that you would
12   have to serve in prison?
13               THE DEFENDANT:  Yes.
14               THE COURT:  On the other hand, if they believed you,
15   you would be acquitted.  You would get to go home.  Do you
16   understand that you're balancing the two things against each
17   other?
18               THE DEFENDANT:  Yes.
19               THE COURT:  And notwithstanding the fact that you have
20   a potential defense, how do you want to plead?
21               THE DEFENDANT:  Guilty.
22               THE COURT:  OK.  Ms. Shroff, do you believe that there
23   was an adequate factual basis for the plea?
24               MR. SHROFF:  Yes, your Honor.
25               THE COURT:  Ms. Houle, do you think there's an
```

GBIAORTPps

```
 1    adequate factual basis for the plea?

 2              MS. HOULE:  Yes, your Honor.

 3              THE COURT:  I think there is barely an adequate

 4    factual basis for the plea.  But I also think that the risk,

 5    given the facts, are substantial to the defendant.  And under

 6    those circumstance, I think he's adequately allocuted to a

 7    conscious avoidance, to consciously avoiding knowledge of what

 8    he had in the boat.  And therefore I think there is an adequate

 9    factual basis for the plea.

10              OK.  Mr. Ortiz, how do you now plead?  Guilty or not

11    guilty?

12              THE DEFENDANT:  Yes, guilty.

13              THE COURT:  Are you pleading guilty voluntarily and of

14    your own free will?

15              THE DEFENDANT:  Yes.

16              THE COURT:  One of the provisions in the information

17    is a forfeiture allegation.  What that means is that you're

18    obligated -- this is a forfeiture?  Yes.  The government is

19    saying that you have to forfeit to the government any property

20    that was used to commit the crime -- or any proceeds of the

21    crime, so any money that you received for committing the crime.

22    Do you agree to forfeit such property to the government?

23              THE DEFENDANT:  Yes.

24              THE COURT:  All right.  I find that there is an

25    adequate factual basis for the plea, that Mr. Ortiz understands
```

GBIAORTPps

```
1    the rights he is giving up, is waiving those rights knowingly
2    and voluntarily.  I find that Mr. Ortiz understands the
3    consequences of his plea, including the potential sentence that
4    may be imposed.  Because I find his plea is entered knowingly
5    and voluntarily, and is supported by an independent factual
6    basis for each and every element of the crime charged, I accept
7    his guilty plea.
8            I direct that a presentence investigation be conducted
9    by the Probation Office and that a presentence report be
10   prepared.
11           Mr. Ortiz, you're going to be interviewed by the
12   Probation Office as part of the presentence investigation
13   process.  You can and you should have your lawyer with you for
14   that interview.  If you say anything to the probation officer,
15   it's important that what you tell them is accurate.  The report
16   that they prepare is very important to me in determining what
17   the appropriate sentence in your case is.  So it's important
18   that I have accurate information.  Do you understand that?
19           THE DEFENDANT:  Yes.
20           THE COURT:  There will come a point in time where
21   there will be a draft of the report prepared.  Your attorney
22   will provide it to you and will make sure that someone reads it
23   to you.  If there's anything wrong with it, anything that's not
24   accurate, you need to tell Ms. Shroff so that she can make sure
25   that it gets corrected.  OK?
```

GBIAORTPps

1          THE DEFENDANT:  Yes.

2          THE COURT:  OK.  Both Ms. Shroff and you will have the

3    opportunity to speak on your behalf at the time of sentencing.

4    Ms. Shroff, could you please make his appointment within the

5    next two weeks.  The government should provide the statement of

6    the case to probation in the next two weeks.

7          Do we have a sentencing date?

8          THE CLERK:  Yes, your Honor.  March 3rd, 2017 at 2

9    p.m.

10          THE COURT:  Sentencing submissions are due one week

11    before sentencing.

12          Anything further from the government?

13          MS. HOULE:  No.  Thank you, your Honor.

14          THE COURT:  Ms. Shroff?

15          MR. SHROFF:  No, your Honor.

16          THE COURT:  OK.  Everybody have a nice holiday.  Thank

17    you, Mr. Ortiz.  I'll see you next year.

18          MR. SURRATT:  Thank you, your Honor.

19                              o0o

20

21

22

23

24

25

# EXHIBIT B

Dear Judge,

Hello, my name is FELICITA MARIANITA VITE CHARCOPA

NELSON ORTIZ is my son, one of four siblings, the children of my first relationship.  Their father is RUFINO ORTIZ COTERA.

Because of many differences that existed in our relationship, we separated.  The oldest brother went with his father.  I stayed with the three youngest.  I had to be father and mother in order to give them an education and carry on with my three children.  It was very difficult to see that we didn't have enough money.  My son Nelson was the oldest of the three.  He left school at age 8.  He would go with me to harvest shellfish to help out.  He would watch his little brothers and sisters while I went to do laundry for other people.  After a time I decided to start my life again with another partner.  After a time I was a victim of domestic abuse.  My son asked us to separate, but I was already pregnant, so I decided to stay with the father of my other children.  My son left home at age 11 to go with his father.  As the years passed,  my son decided to return home but the financial situation was difficult.  He decided to go to Manta, the Santa Marianita parish, to work as a fisherman.  He was able to help me financially for the education of his little brothers and sisters.  He has always looked out for us.  He is very respectful and humble.  After the years passed, like every other young man, he decided to get engaged to my daughter-in-law, Maria Gonzalez who has a two-year-old boy.  After the earthquake on April 16, 2016 that hit our country, my son decided that his wife should stay with me because things were difficult.  He decided to leave to give something better to his family and to my grandchild who was on the way, who is now a month old.  For me as a mother it is hard to know that my son is in jail because he sought better opportunities.  As a mother, my son is the breadwinner of his family, we await him with open arms.  I hope you will consider the pain of our family and give him the shortest sentence that is fair for my son.  We will be waiting for him until he is back with us.

Thanking you in advance.

Querido Juez

Mi nombre es FELICITA MARIANITA VITE CHARCOPA

NELSON ORTIZ  es mi hijo,  ellos son 4 hermanos ellos son hijos de mi primer compromiso el papa de ellos es RUFINO ORTIZ COTERA

Por muchas diferencias k hubieron en la relación nos separamos el hermano mayor se fue con el papa yo me quede con los 3 más pequeños yo tuve k hacer de padre y madre para poder darles los estudios y salir adelante con mis 3 hijos  era muy difícil al ver k no nos alcanzaba el dinero mi hijo Nelson era el mayor de los 3 k tenía yo se retiró de la escuela a la edad de 8 años iva con migo a las pescas conchas para ayudar cuidaba a sus hermanos más pequeños cuando yo iva a lavar ropa ajena al pasar un tiempo decidí rehacer mi vida con otra pareja al pasar el tiempo sufrí de maltrato intrafamiliar mi hijo me pidió que me separara yo ya estaba embarazada x lo k decidí seguir con el papa de mis otros hijos mi hijo se fue de la casa a la edad de los 11 años con su papa al pasar los años mi hijo decide regresar a casa pero la situación económica era difícil el decide irse a manta a la parroquia santa marianita a trabajar de pescador con lo k hacia me ayudaba  económicamente para los estudios de sus hermanos más pequeños el siempre a estado pendiente de nosotros él es respetuoso y  muy humilde después al pasar los años como todo joven decide comprometerse con mi nuera María González que tiene un niño de 2 años después del terremoto del 16 de abril del 2016 k sacudió nuestro país dejado después de ese suceso mi hijo decide k su mujer se quede conmigo xq las cosas están difícil y decidió partir para darles lo mejor a familia y a   mi nieto k venia en camino el cual ya tiene   1 mes de nacido para mí como madre es duro saber k mi hijo está preso x buscar mejores oportunidades yo como madre mi hijo es el sustento de su familia la cual los esperamos con los brazos abiertos espero tenga en cuenta el dolor de esta familia y le dé la condena mínima y justa para mi hijo k lo estaré esperando para cuando este de regreso con nosotros

De ante mano

Muchas gracias

Dear Judge,

Hello, my name is Cesarina Garcia Vite.

Nelson Ortiz Vite is my brother.  Our mother is Felicita Vite.  We have different fathers, we are from Esmeraldas, Ecuador, a small village called Daule.  My brother has always been a decent and hard-working person.  He doesn't want to make trouble with anyone.  He has always protected us.  In my case, I respect my brother greatly.  I had a problem with my partner.  Nelson did not like that.  I am engaged, I have a daughter, Sheila Estrada.  My partner's name is Edison Estrada.  Nelson told me that he was going to build a big house, because that is something he dreams of, to work and build a home for my mother, so that no one can bother us.  Nelson helped me, he gave me a place to stay in his house, and he supported me always.  As a boy, his childhood was not easy, because our mother separated from his father when Nelson was very young.  This affected him severely.  As time passed, our mother got together with my father, they had a lot of problems.  This affected my brother even more.  We are a very modest family.  That is why my brother decided to leave school to help my mother.  At age 11, Nelson went to live with his father because the house we lived in had a lot of problems.  He returned to my mother's house at age 17 and stayed for a while to help my mother by working.  When he reached adulthood, he decided to go to Manta to fish.  In his adolescent years he lost a friend who was more like a brother.  This affected my brother severely.  Nelson has fished in Manta since age 19 to help my mother and our younger siblings financially.  As time passed, my brother got engaged with my sister-in-law Maria Gonzalez, he would always take her to her doctor's appointments.  He always watched to be sure nothing would happen to her, so she and her baby who was yet to be born would have everything they needed.  His son, my nephew, was born on February second this year.  Unfortunately Nelson could not be here.  His son's name is Isaias Gonzales.  Nelson is the breadwinner for his family that just began, he is a father for the first time.  Nelson has always been responsible.  He enjoyed working from a tender age, and ever since he went to Manta, he has worked as a fisherman.  Here in Ecuador his partner and his family awaits him with open arms.  This has been very difficult for all of us, my mother, my sister-in-law, my siblings.  My nephew is still unaware, but he needs his father.  We are all suffering greatly.  Any mother with children she is close to would be sad to think of her child and not be near him.  On behalf of all of us, I ask you from the bottom of my heart sincerely for a fair sentence and the shortest one possible, to be able to see Nelson's family.  Thank you for your time.

Querido Juez

Hola soy Cesarina Garcia Vite.

Nelson Ortiz Vite es mi hermano, nuestra madre   es Felicita Vite somos de diferentes padres, somos de Esmeraldas, Ecuador de un pueblo llamado Daule. Mi hermano, siempre ha sido una persona muy buna, trabajadora, no le gusta meterse con nadie él siempre nos ha  protegido en mi caso mi hermano a mi hermana yo lo respeto mucho yo tuve un problema con mi pareja a él no le gusto yo soy comprometida tengo una niña Sheila Estrada mi pareja se llama Edison Estrada él me dijo que iba a hacer una casa grande porque eso es algo que el anhela trabajar para hacerle la casa a mi mamá para que así nadie nos humille el me ayudo me dio posada en su casa y me apoyo siempre de niño su infancia no fue fácil ya que nuestra madre se separó de su papá cuando él era muy pequeño eso lo afecto mucho al pasar el tiempo nuestra madre se unió con mi papa ellos tenían muchos problemas eso afecto mucho más a mi hermano nosotros somos de una familia muy humilde por lo que mi hermano decidió retirarse de la escuela para ayudar a mi mamá a los once años se fue donde su papa porque en la casa que vivíamos había problemas a los 17 años regreso a la casa de mi mama y se quedó un tiempo en ayudar a mi mama trabajando, cuando cumplió la mayoría de edad decidió irse a manta a pescar en su adolescencia perdió a un amigo que más que un amigo era como su hermano eso le afecto demasiado mi hermano desde los 19 años a pescado en manta para ayudar económicamente a mi mama y a mis hermanos más pequeños al pasar el tiempo mi hermano se comprometió con mi cuñado María Gonzales siempre la acompañaba a las citas médicas pendiente de que no le pasara nada ni faltase nada a ella y su pequeña que aún no nacía mi sobrino nació el 2 de febrero de este año lastimosamente el no pudo estar. Su hijo se llama Isaías Gonzales él es la fuente de ingresos para su familia que recién está construyendo padre por primera vez él siempre ha sido responsable, le ha gustado trabajar desde muy pequeño y el desde que se fue a manta  siempre ha trabajado de pescador, aquí en Ecuador su pareja, su familia lo esperamos con los brazos abiertos esto a sido muy difícil para todos nosotros mi mama mi cuñada mis hermanos mi sobrino no sabe nada pero necesita de su padre todos estamos sufriendo mucho para cualquier madre que tenga hijos y sea muy apegado a ellos  es muy triste pensarlo y no estar cerca de ellos y el de nosotros le pido de lo más profundo y sincero de mi corazón una sentencia justa y más mínima posible para poder verlo a él y a su familia que lo necesito gracias por su tiempo.

Dear Judge,

Hello, my name is Elixita Garcia Vite.

NELSON ANTONIO ORTIZ VITE is my brother.  Our mother is Mrs. Felicita Vite.

We have different fathers.  We are from the province of Esmeraldas, Ecuador, from a village called Muisne Daule.  My brother is a hard-working person, who from a very tender age has had to work.  Because of situations in life and differences between his parents, they had to separate.  In personal matters, my brother has always given me his unconditional support, in good times and bad.  We have limited means.  I have a daughter, aged two years and five months, her name is Valeska Marquez.  My brother has always had a dream to build a house for our mother so no one can throw her out or say it doesn't belong to her.  As years went by, my brother was forced to leave school, because our mother didn't have me the money.  At that time she was both mother and father to them.  After some years went by, my mother took a chance with my father, who is now her partner.  After some years, my brother decided to return to his father who lives in Esmeraldas province.  After that my brother returned but just for a few days.  Afterwards he decided to go to Manta because in our area there is no work, there are very few sources of work, he decided to go fish in Santa Marianita.  From what he earned in the catch, he would send money home for expenses and always looked out for us, asking to know how we were doing, how things were going in school.  As the years went by, he decided, like any other young man, to start a family.  His wife has two babies, one that my brother knows, aged two, and the other just a month old, whom he has not met.  His name is Isaias Gonzales.  My brother decided to travel to another country in search of a better opportunity for his family, because things were difficult in Santa Marianita after the earthquake which shook our country on April 16, 2016.  The houses of some family members were destroyed completely.  One always has the dream of returning home successfully to our country.  For all of these reasons,  it was very difficult when Nelson called us from the jail.  As a family this united us, we have faith in God, we know that everything will come out fine and Nelson will be back with us soon.  Our only request is that my brother's sentence be fair and short, because we are suffering greatly.  We have great confidence in the justice of your country.
Please take our request into consideration, because our brother is very important to his family, his children who await him.  Thanking you in advance.

Querido Juez

Hola soy Elixita Garcia Vite

NELSON ANTONIO ORTIZ VITE  es mi hermano nuestra madre la señora Felicita Vite

Somos de padres diferentes somos de la provincia de Esmeraldas Ecuador de un pueblo llamado Muisne Daule mi hermano es una persona trabajadora que desde muy temprana edad se ha visto en la necesidad de trabajar ya  x cuestiones de la vida y diferencia de sus padres tuvieron que separarse en lo personal mi hermano siempre me ha dado su apoyo incondicional  en las buenas y malas pues ya k somos de escasos recursos yo tengo una niña de 2 años 5 meses se llama Valeska Marquez  pues mire mi hermano siempre ha  tenido un sueño ,el de construirle una casa a nuestra mama para k nadie la bote ni le recrimine k eso n es de ella al pasar los años mi hermano se vio en la penosa obligación de retirarse de la escuela debido a k los recursos económicos n le alcanzaban a nuestra mama ya k ella en ese entonces era padre y madre para ellos pues después  paso de los años mi mama se dio una oportunidad con mi papa quien en la actualidad es su pareja después de unos años mi hermano decidió regresar con su papa quien vive en la provincia  de Esmeraldas después de eso mi hermano regreso pero esta vez solo x unos días a casa  después de eso el decide irse a la cuidad de manta debido a que en nuestra parroquia no hay trabajo y son muy pocas las fuentes de trabajo el decide irse a pescar a santa marianita con lo k hacía en cada pesca él mandaba dinero para los gastos y siempre estuvo pendiente de nosotros saber cómo estábamos como nos iva en la escuela colegio al pasar los años ,como todo joven decide hacer su vida organizar su familia  su mujer tiene 2 bebes uno k mi hermano conoce k tiene 2 AÑOS el otro  k apenas tienes 1 mes de nacido el cual n conoce se llama Isaías González  mi hermano decide viajar a otro país en busca de mejores oportunidades para su familia ya que las cosas también estaban difíciles en santa marianita después del terremoto k sacudió a nuestro país el 16 de abril del 2016 donde la casa de familiares quedaron destruidas x completo pues  sin olvidarse de nosotros pues uno siempre sale con la ilusión de regresar con éxito nuevamente a nuestro país pues para todos nosotros fue duro cuando nos llamó el desde la cárcel pues como familia esto nos unió mas pues sabemos y tenemos la fe en DIOS  que todo saldrá bien k pronto estará de regreso con todos nosotros pues solo pedimos encarecidamente k la sentencia de mi hermano sea mínima justa  ya k estamos sufriendo mucho  confiamos  y en la justicia de ese país .

De ante mano encarecidamente tome en cuenta nuestra petición ya k mi hermano es alguien muy importante para su familia sus hijos k lo esperan  de ante mano muchas GRACIAS…

# EXHIBIT C



